In the
# UNITED STATES COURT OF APPEALS
for the Seventh Circuit

## No. [18-1604]

**UNITED STATES OF AMERICA,**

**Plaintiff-Appellee,**

**v.**

**YARMELL AUSTIN,**

**Defendant-Appellant.**

On Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. [16 CR 359] —John Z. Lee, *Judge*.

## BRIEF OF THE UNITED STATES

JOHN R. LAUSCH, JR.
United States Attorney
for the Northern District of Illinois
219 South Dearborn Street, 5th Floor
Chicago, Illinois  60604
(312) 353-5300

DEBRA RIGGS BONAMICI
Assistant United States Attorney
Chief of Appeals, Criminal Division

KALIA COLEMAN
Assistant United States Attorney

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................... iii

JURISDICTIONAL STATEMENT ...................................................................... 1

ISSUES PRESENTED FOR REVIEW .............................................................. 1

STATEMENT OF THE CASE ............................................................................ 2

SUMMARY OF ARGUMENT .......................................................................... 18

ARGUMENT ....................................................................................................... 19

    I.     The District Court Did Not Commit Procedural Error in Sentencing Defendant. ......................................................................... 19

        A.     Standard of Review ................................................................... 19

        B.     Analysis ........................................................................................ 19

    II.    The District Court Did Not Plainly Err in Imposing a Supervised Release Condition Requiring that Defendant Remain in the Jurisdiction in Which He Is Supervised Unless Granted Permission to Leave. ......................................................... 24

        A.     Standard of Review ................................................................... 24

        B.     Analysis ........................................................................................ 24

CONCLUSION .................................................................................................... 27

# TABLE OF AUTHORITIES

## CASES

*United States v. Anglin*, 846 F.3d 954 (7th Cir. 2017)....................................27

*United States v. Banks*, 828 F.3d 609 (7th Cir. 2016) ..................................... 19

*United States v. Bickart*, 825 F.3d 832 (7th Cir. 2016)....................................27

*United States v. Bloch*, 825 F.3d 862 (7th Cir. 2016).....................................24

*United States v. Castro-Alvarado*, 755 F.3d 472 (7th Cir. 2014) ................... 19

*United States v. Dickson*, 849 F.3d 686 (7th Cir. 2017)..................................26

*United States v. Figueroa*, 622 F.3d 739 (7th Cir. 2010) ............................... 22

*United States v. Gill*, 824 F.3d 653 (2016)......................................................24

*United States v. Givens*, 875 F.3d 387 (7th Cir. 2017).............................. 25, 26

*United States v. Kappes*, 782 F.3d 828 (7th Cir. 2015)...................................25

*United States v. Ortiz*, 817 F.3d 553 (7th Cir. 2016) ......................................26

*United States v. Poulin*, 745 F.3d 796 (7th Cir. 2014)....................................24

*United States v. Poulin*, 809 F.3d 924 (7th Cir. 2016)....................................25

*United States v. Robinson*, 829 F.3d 878 (7th Cir. 2016) ............................... 22

*United States v. Thompson*, 777 F.3d 368 (7th Cir. 2015)...............................25

*United States v. Warren*, 843 F.3d 275 (7th Cir. 2016)...................................25

## STATUTES

18 U.S.C. § 922(g)(1) ......................................................................................... 1

18 U.S.C. § 3231.................................................................................................. 1

18 U.S.C. § 3553(a) ....................................................................................*passim*

18 U.S.C. § 3742(a) ....................................................................... 1

28 U.S.C. § 1291 ............................................................................ 1

**SENTENCING GUIDELINES**

U.S.S.G. 2K2.1(a)(4) ...................................................................... 5

U.S.S.G. 4A1.1(a) ...................................................................... 5, 6

U.S.S.G. 4A1.1(b) ...................................................................... 5, 6

U.S.S.G. 4A1.1(d) ......................................................................... 6

U.S.S.G. 4A1.2(b) ......................................................................... 7

U.S.S.G. 5K2.23 ........................................................................ 4, 7

U.S.S.G. 5G1.3(b) ...................................................................... 4, 7

## JURISDICTIONAL STATEMENT

Defendant-Appellant's jurisdictional statement is not complete and correct.

Defendant was charged by indictment with a violation of 18 U.S.C. § 922(g)(1).[1] R. 1. Defendant was convicted by a jury and was sentenced on March 1, 2018. R. 78. The district court's Judgment and Commitment Order was entered on the docket on March 9, 2018. R. 85. Defendant timely filed a notice of appeal on March 9, 2018. R. 81.

The district court had jurisdiction pursuant to 18 U.S.C. § 3231. This Court has jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

## ISSUES PRESENTED FOR REVIEW

1.     Whether the district court procedurally erred by referencing matters outside the record when the court otherwise provided a clear statement of reasons for choosing a low-end guidelines sentence.

2.     Whether the supervised release condition requiring the defendant to remain in the jurisdiction where he is being supervised is impermissibly

---

[1] Citations to documents in the electronic record on appeal are to "R.," followed by the document number. Citations to transcripts of defendant's trial are to "Tr.," followed by the page number. Citations to the Presentence Investigation Report are to "PSR," followed by the paragraph number. Citations to defendant's opening brief and Short Appendix, are to "Br.," and "SA.," respectively, followed by the page number.

vague, where the district court explained at sentencing that by "jurisdiction" it meant the "federal district, jurisdiction, where the District Court sits."

## STATEMENT OF THE CASE

### *Offense Conduct*

On the night of August 10, 2015, at approximately 1:53 a.m., Chicago Police Department ("CPD") Officers Anthony Cardella and Brain Dorsch were on routine patrol in the 25th District on Chicago's west side when they observed defendant exiting an alley on a bicycle and riding on a sidewalk near the location of Long and LeMoyne Street. Tr. 13-14. As the officers approached defendant to conduct a field interview and announced their office, he sped away on his bicycle, leading the officers on a chase that ended in the back yard of a private residence. Tr. 15-26, 49-53.

As officers pursued defendant from their vehicle, Officer Cardella saw a black object in defendant's hand which he believed to be a gun. Tr. 19-20. Officer Cardella told Officer Dorsch that he observed something in defendant's hand. Tr. 52. Officer Cardella exited the police vehicle and attempted to approach defendant on foot. Tr. 19-20. Defendant threw down his bike and took off running through a gangway of a private residence. Tr. 20. As Officer Cardella pursued defendant through the gangway, he observed defendant drop the black object (later discovered to be a loaded .22 caliber pistol) to the ground near a wooden fence. Tr. 22. After throwing the gun to the ground, defendant

2

jumped the wooden fence. Tr. 22. Officer Cardella continued to pursue defendant and finally captured him in the backyard of the private residence. Tr. 25.

Officer Dorsch further testified that he recovered the .22 caliber pistol from the area near the fence where Officer Cardella had observed defendant throw it. Tr. 59-57.

Subsequently, the gun was examined for fingerprints and DNA. No fingerprints were recovered; however DNA subsequently was recovered from the gun and tested. Tr. 107-132, 182-83. Defendant was excluded as the source of DNA found on the ammunition inside the gun and on several parts of the gun, but could not be excluded as being the source of DNA recovered from the exterior of the gun's magazine. Tr. 169-172.

While defendant was in pretrial detention, defendant made statements during telephone calls that were recorded and later played for the jury. Specifically, in a recorded jail call on September 13, 2015, the defendant had the following exchange with a family relative:

RELATIVE: What time was that about two or three in the morning? When you were riding the bike?

DEFENDANT: No, it was like twelve.

RELATIVE: Ok, why would you be carrying a gun?

DEFENDANT: I'm carrying it from one place to another

Tr. 138.

At trial, defendant stipulated that he was a felon and that the .22 caliber firearm recovered by Officer Dorsch had traveled in interstate or foreign commerce. Tr. 60, 138.

### *Sentencing*

Prior to his sentencing hearing, defendant filed a sentencing memorandum. R. 65. In the memorandum, defendant argued for a below-Guidelines sentence of 60 months' imprisonment. R. 65. In support of this request, defendant contended that, pursuant to Guideline §§ 5K2.23 and 5G1.3(b), his guidelines range should be reduced by 10 months to credit the time he spent in state custody on the instant offense, prior to the case being federally adopted. R. 65. Defendant also filed a memorandum listing objections to various factual findings in the Presentence Investigation Report ("PSR") and the conditions of supervised release proposed by the Probation Officer. R. 66. Specifically, defendant objected to the proposed special supervised release condition 9, which would require him to undergo a sex offender evaluation and complete any recommended treatment.[2] R. 66. Defendant reserved the right to make any additional objections. *Id.*

---

[2] The request for the imposition of this condition was based on defendant's prior criminal charges for offenses involving sexual abuse, namely, a 2005 arrest for aggravated criminal sexual abuse, and a 2005 conviction on several counts of aggravated criminal sexual assault with a firearm which subsequently were reversed.

The district court conducted a sentencing hearing on March 1, 2018. R. 78; SA. 1. The court began the hearing by addressing the defendant's objections to factual findings in the PSR. SA. 3-9. The court next considered the advisory sentencing range under the Sentencing Guidelines. SA. 10. Consistent with the PSR, the district court calculated defendant's base offense level to be 20, pursuant to Guideline § 2K2.1(a)(4). PSR at ¶ 18; SA. 11.

The district court calculated defendant's criminal history category as VI, based on the following:

(1) three criminal history points pursuant to Guideline § 4A1.1(a), based on a 2007 conviction in the Circuit Court of Cook County for aggravated robbery (05CR2118601), for which defendant was sentenced to a term of 10 years' imprisonment;

(2) three criminal history points pursuant to Guideline § 4A1.1(a), based on a 2006 conviction in the Circuit Court of Cook County for possession of a stolen motor vehicle (05CR0371901), for which defendant was sentenced to a term of 6 years' imprisonment, concurrent with his sentence in 05CR2118601;

(3) two criminal history points pursuant to Guideline § 4A1.1(b), based on a 1998 conviction in the Circuit Court of Cook County for possession of a controlled substance (98CR0022101), for which defendant was sentenced to one-year term of imprisonment;

(4) two criminal history points pursuant to Guideline § 4A1.1(b), based on a 1998 conviction in the Circuit Court of Cook County for possession of a controlled substance (98CR2485301), for which defendant was sentenced to a one-year term of imprisonment, to run concurrently with the sentence imposed in Case No. 98CR0022101;

(5) three criminal history points pursuant to Guideline § 4A1.1(a), based on a 1998 conviction in the Circuit Court of Cook County for possession of a controlled substance (98CR0770001), for which defendant was sentenced to a three-year term of imprisonment, to run concurrently with the sentence imposed in Case Nos. 98CR0022101 and 98CR2485301;

(6) three criminal history points pursuant to Guideline § 4A1.1(a), based on a 1996 conviction in the Circuit Court of Cook County for unlawful use of a weapon by a felon (96CR1210801), for which defendant was sentenced to a five-year term of imprisonment;

(7) two criminal history points pursuant to Guideline § 4A1.1(b), based on a 1996 conviction in the Circuit Court of Cook County for possession of a controlled substance (95CR2893001), for which defendant was sentenced to one-year term of imprisonment;

(8) three criminal history points pursuant to Guideline § 4A1.1(a), based on a 1994 conviction in the Circuit Court of Cook County for possession of burglary tools (94CR0831601), for which defendant was sentenced to a four-year term of imprisonment; and

(9) two criminal history points pursuant to Guideline § 4A1.1(d), for committing the offense of conviction while under a criminal justice sentence, namely, parole on the conviction in Case No. 05CR2118601.

SA. 12; PSR at ¶¶ 34-45.

The district court then heard argument from defendant regarding whether, pursuant to Guideline §§ 5K2.23 and 5G1.3(b),[3] he was entitled to 10 months' credit for the time he spent in state custody for the same conduct for which he was charged in this case. SA. 10. The district court determined that defendant was not entitled to the requested credit. SA 10.

The product of defendant's adjusted offense level of 20 and criminal history category of VI was an advisory sentencing range of 70-87 months' imprisonment. SA. 11. The parties agreed with the district court's Guidelines calculations. *Id.*

The court next heard argument from the parties concerning the factors set forth in 18 U.S.C. § 3553(a). SA. 12 -19. Defense counsel argued for a below-Guidelines sentence of 48 months' imprisonment, which was even lower than the 60 month-term of imprisonment he requested in his sentencing memorandum. SA. 12. In support of this request, defense counsel acknowledged defendant's lengthy criminal history, and the fact that past periods of incarceration has not deterred defendant from engaging in further

---

[3] Guideline § 5K2.23 provides that "a downward departure may be appropriate if the defendant: (1) has completed serving a term of imprisonment; and (2) subsection (b) of §5G1.3 (Imposition of a Sentence on a Defendant Subject to Undischarged Term of Imprisonment or Anticipated Term of Imprisonment) would have provided an adjustment had that completed term of imprisonment been undischarged at the time of sentencing for the instant offense." Under Guideline § 4A1.2(b), a "sentence of imprisonment" is defined as "a sentence of incarceration and refers to the maximum sentence imposed."

criminal conduct, but argued that defendant needed something to "break the cycle of incarceration," a goal that could not be accomplished by a lengthy prison sentence. SA. 12, 13. In addition, defense counsel argued that defendant's age reduced his likelihood of recidivism. SA. 13.

The government argued that a sentence of 87 months' imprisonment was warranted based on:

(1)    The seriousness of the offense;

(2)    Defendant's lengthy criminal history, which included felony convictions for use of firearms and violence, and his commission of the offense while on parole for a state aggravated robbery conviction; and

(3)    The need to promote respect for the law, and to provide specific and general deterrence.

SA. 14-19.

The government further argued:

"Your honor is aware of the extreme violence and gun violence that plagues the City of Chicago. It is an extreme problem that none of us can ignore.

And what's particularly concerning about this case is that the defendant was on parole at the time he was in possession of a loaded firearm. And he was on parole for a violent aggravated battery (*sic*) offense, in which he had received a consequential significant sentence of ten years imprisonment.

And not only was he on parole, but he had just been released from parole in August of 2015, when he was caught with this gun. That is concerning. That is alarming. Given what we know about gun violence, it's usually perpetuated by individuals who are convicted felons. I am not going to speculate as to why the defendant was in possession of that gun, what he was intending to do with that gun.

But the fact that he knew that he was not supposed to have that weapon, led police on a chase, and luckily they were able to apprehend him and –and confiscate that weapon before something happened. And given his past criminal history, it does indicate that he has a propensity to commit violent acts." SA. 15-16.

In consideration of general deterrence, the government stated:

"And as for general deterrence, we certainly, given the circumstances in Chicago, given the circumstances across the country with gun violence, the government would submit that imposing consequential sentences in cases like this may convey to others who are felons that you cannot unlawfully possess firearms and think that a consequential sentence will not be imposed if you are caught. And so there is a need to send that message of general deterrence."

SA. 19.

The government next commented on the history and characteristics of the defendant. The government pointed out that, in addition to rehabilitation, the court has to also consider adequate punishment. SA. 16. The government stated that the defendant has been committing crimes since the age of 16, and pointed out that he has several felony convictions, including his most recent conviction for aggravated robbery. SA. 16. The government argued that defendant had had ample opportunities to rehabilitate himself, receiving multiple lenient sentences of probation in the past and minimal periods of incarceration, but had chosen to reoffend. SA. 16-17. government noted defendant routinely violated his probation, earning additional periods of incarceration. SA. 17. Following the government's arguments, the court asked

defense counsel if there were any objections to the proposed conditions of supervised release. SA. 19. Defense counsel raised a single objection—to the requirement that defendant undergo a sex offender evaluation (special condition #9). SA. 19.

Following the arguments of counsel, the court offered defendant an opportunity to speak. SA. 27-30. Defendant addressed the court and appealed to the court to give him a "chance" and to impose a lenient sentence. SA. 27 - 30.

The court then went over the factors it considered important in determining the sentence, beginning with the history and characteristics of the defendant:

> Mr. Austin, what concerns me about this case is not only the repeated criminal history in your background. But also the fact that when you did get out, you were on parole. And even though you were on parole, it's clear and you knew that you shouldn't have a gun. And yet there you were, violating the terms of your parole, after all that you have been through, after all the periods of incarceration, after all the prior violations of parole that you had. And yet, there you were violating your terms of your parole.
>
> So when I try to kind of think ahead and try to see how you would behave after you serve this sentence, all I have to go on is your history. And your history seems to indicate or indicates to me that all the times that you have spent incarcerated, that up until now it didn't really teach you anything about obeying the law and about doing what is right, so that you and your family won't have to suffer for the consequences of your actions. That's what most concerns me.

And, I don't know, Mr. Schmiege (defense counsel), if you want to address that. Or, Mr. Austin, if as part of your allocution if you want to address that. But that's one of the things that weighs on me in this case.

SA. 30-31.

Defendant was then permitted to address the court's comments:

"I understand. And I can't disagree with you enough. But I was on – I was out. I came home 2013. I was out for – supposed to get off parole. That – I supposed to be on parole during the time when I was incarcerated because when I was incarcerated I had immediate release after –after I was at the—because I spent over the time that I –that—when I went to court, got found not guilty, was immediately released.

So I was supposed to have been off parole in that August, when the case supposed to happen. I was working at the time. I was on – I was out for two straight years. I was working and trying to find jobs. I was doing programs and everything. I was in no trouble at all.

And when this case happened, you know, it was like, it was nothing going on. I was not trying to harm anyone. I wasn't committing any crimes. I wasn't planning on doing anything. I wasn't—and I wasn't—it wasn't like I was finna to go kill somebody or I was a gang member. I'm not a gang member. I'm not in a gang. It was not finna to be used in a crime or anything like this at all. I was not. I was – I was working at the time. Was—it was an unfortunate situation."

SA. 31-32.

Following defendant's remarks, the court discussed the nature and circumstances of the offense, the need for the sentence to promote respect for the law, provide general and specific deterrence, and protect the public:

Having reviewed the presentence investigation report, the sentencing submission by the parties, the arguments from counsel,

11

and the statements by Mr. Austin today, I will now state the sentence. In arriving at the sentence I have considered a number of factors. For the record, I have considered the advisory sentencing guideline range.

Turning to the nature and circumstance of the offense, the government is right that illegal possession and use of guns has caused devastation throughout our communities, particularly here in Chicago. It seems that hardly a day goes by without reading about another shooting in the city caused by the proliferation of handguns.

In this case, Mr. Austin has a pistol in his possession while riding his bike at 1:50 a.m. in the morning. And when the officers attempted to interview him, he fled. And the officers recovered a .22 caliber pistol that Mr. Austin discarded.

While laws prevent people with criminal histories like Mr. Austin's from possessing guns, those laws are there for a purpose. They must be enforced. And a tough sentence is needed to deter not only Mr. Austin from committing a similar offense in the future, but to deter others from doing the same.

Furthermore, at the time of the offense, Mr. Austin was on parole for case 05 CR 0371901 for possession of a stolen vehicle and possession of a controlled substance, and case 05 CR 2118601, aggravated robbery. In my mind, this demonstrates a conscious and conspicuous disrespect for the law and the criminal justice system. And I consider this to be a significant aggravating factor.

SA. 33-34.

The court then addressed other aspects of the defendant's history and characteristics, particularly those emphasized by defendant in mitigation:

Turning to Mr. Austin's background and characteristics, with regard to his criminal history background, between the ages of 18 and 29, Mr. Austin was convicted on 12 separate occasions. And his criminal history points of 20 is seven more than what is required to fall within the highest criminal history category under the U.S. Sentencing Guidelines category VI.

I find it particularly troubling—what I find particularly troubling about Mr. Austin's criminal history is that he previously served a number of terms in prison, including between the times from August 12, 1994, to August 8, 1995; July 26, 1996, to January 3, 1997; March 14, 1997, to July 18, 1997; December 8, 1998, to November 20, 2000; May 23, 2003, to July 15, 2003; from April 19, 2004, to June 30, 2004; from May 11, 2007, to September 17, 2013, and then August 18, 2015, to August 21, 2015.

A number of those incidents were times when Mr. Austin was readmitted due to his violations of parole. This leads me to conclude that those periods of incarceration did little to deter Mr. Austin from committing further crimes, and that a significantly greater term of imprisonment is needed now in order to get Mr. Austin's attention and to encourage him to reevaluate the course of his life to date and to take affirmative, hard choices to change it.

His attorney, Mr. Schmiege, argues that the deterrent effect of criminal sanctions are specific to the risk of detection and arrest, rather than the severity of punishments. But Mr. Austin's prior convictions did nothing to deter him from more criminal conduct. At this point I conclude that a more severe term of imprisonment is the only thing that can.

For the record, I did not consider as part of material to my sentencing decision Mr. Austin's arrest history or the other charges of which he was eventually found not guilty or acquitted in arriving at my sentence.

As for Mr. Austin's personal history, family history and background, I do recognize that Mr. Austin grew up in a poor neighborhood with the guidance of a father to help him, and that he experienced the violence of his neighborhood himself at a young age when he first observed a shooting when he was 13 and lost two friends to violence in the 1990s. And in fact, Mr. Austin himself was shot in 2001 and was shot at in 2003 by a carjacker. I do consider those personal factors to be mitigating factors.

I also read the letters submitted on his behalf. And it appears that Mr. Austin enjoys the support of his family. And his two aunts are

13

here to support him today. And I consider that to be a mitigating factor as well.

Mr. Austin also notes in his letter to the probation officer, as Mr. Schmiege noted, that he mentions his nonbinding plea agreement, the draft that was provided to him. And he states that he would have made a different decision, would have decided to plead, had the draft of the plea agreement accurately reflected the sentencing guidelines that are set forth in the presentence investigation report.

However, to the extent that he was provided with a nonbinding plea agreement, I would note that the standard plea agreements provided by the U.S. Attorneys' Office to defendants note that the guideline calculations in the plea agreement are preliminary in nature only. And it expressly states that they are not binding, they are nonbinding predictions upon neither party is entitled to rely.

Based upon that, I do not find Mr. Austin's argument with regard to his decision to go to trial material to my sentencing decision.

I have also considered Mr. Austin's age. He is now 41. After he serves a sentence he will be in his mid-40s. And I have considered that to be somewhat mitigating.

Finally, Mr. Austin asked that I give him credit for the ten months that he served in the Illinois Department of Corrections from August 10, 2015, to June 16, 2016, prior to being remanded in federal custody. I do believe that—and I agree that it's appropriate to give him the ten months, a credit for that time, given the fact that his custody in the IDOC arose out of the same conduct and offense that is subject to the offense that is before the Court today.

SA. 35-38.

The court then addressed comments made by defendant during his allocution:

Okay. Mr. Austin, you say that you want to turn your life around and that you just made a mistake. You state that you want to be a good father to your children and a good son to your mother. I

14

believe you are sincere in that, and I believe that you have what it takes to achieve that goal.

But you keep getting in trouble with the law by making the wrong choices and violating the conditions that are imposed upon you by the Courts and by committing other crime. Those are decisions that you yourself make, no one else.

If you want to change the course of your life to be there for your family, you have to make the decision day by day to do the right thing. Drug trafficking and have guns illegally are serious offenses. And that will only lead you to more and more trouble, and more and more dire consequences for yourself and for your family.

I am sure that you do not want to spend the rest of your 40s and your 50s in prison. It will be a complete waste of your talents and the things that you can contribute to your family and your community. Your family needs you, and your actions have a direct consequence on them.

I hope that you take these proceedings and your sentence as a wake-up call, to make the right decisions. I know sometimes it can be tough decisions, but to make the right decision day by day, and to be successful in the change that you want to achieve. I can assure you, sir, that if you go back to your old ways and commit further offenses, your future sentences will only become harsher and harsher.

To Mr. Austin's family members who are her, I want to thank you for your presence today. Please let the family members know that I have reviewed his letters, and they did help, and they made a different. And I want to encourage you to keep on supporting Mr. Austin as he serves his sentence afterwards.

SA. 38-39.

Before pronouncing sentence, the court announced the mandatory

supervised release conditions:

All right. Turning first to supervised release. Based upon all the factors discussed as well as the other factors enumerated in 18

U.S.C. Section 3553(a), I hereby impose a period of supervised release of three years. I believe that three years supervised release is necessary in light of the need for Mr. Austin to reintegrate into society once he's released from the period of custody, and to obtain the necessary supervision and care in light of his criminal history and his prior history and background.

As part of supervised release, the Court believes it is necessary to impose the following conditions. Let me read them on the record as I am directed to do . . . .

He shall remain within the jurisdiction where he is being supervised. That is by jurisdiction I mean the federal district, jurisdiction, where the District Court sits, unless he is granted permission to leave by the Court or the probation officer. He shall report to the probation officer as directed by the Court or probation officer . . . .

Mr. Schmiege, you have the right to request a more detailed reasoning for each of the conditions I imposed, or you may waive that right.

SA. 39-40, 42.

Defense counsel responded, "We waive that right, your Honor. Thank you." SA. 42. The court then asked, "Do you have any other objections to the conditions of supervised release that I propose?" and defense counsel responded, "No, your Honor." SA 42. Hearing no objection from either party the district court ordered that the stated conditions of supervised release would be imposed.

The court then pronounced sentence:

All right. Now turning to the period of imprisonment. Based upon all of the factors discussed as well as the other factors enumerated in 18 U.S.C. Section 3553(a), I hereby impose a period of incarceration of 70 months. In arriving at this number, I started

at 80 months. I believe that a sentence in the high end of the guideline range was appropriate given Mr. Austin's extensive criminal history that I discussed. Especially his repeated failures to comply with the parole, as well as the seriousness of the offense.

I then took the 80 months and reduced it by the ten-month period that defendant spent in state custody to provide him credit for those ten months.

In light of that, I find that 70 months is sufficient but not greater than necessary to impress upon Mr. Austin a respect for the law, to provide just punishment for the offense, and to deter him and others from committing similar offenses.

I find that a sentence of 48 months as requested by Mr. Austin would not be sufficient to accomplish those goals, given the seriousness of the offense, and particularly given Mr. Austin's extensive criminal history, which demonstrate a specific need for specific deterrence.

I hereby recommended that he receive substance abuse counseling and vocational training while he is in custody. In light of his financial condition, circumstances, the fine is waived. And a special assessment is also imposed in the amount of $100.

The Court finds that the sentence that I have proposed is sufficient but not greater than necessary to satisfy the purposes of 18 U.S.C. Section 3553(a). And furthermore, the government's motion for preliminary order of forfeiture is granted.

Mr. Schmiege, are there any other arguments in mitigation that I failed to address?

SA. 42-44.

Defense counsel responded, "[n]o, your honor." SA. 44.

The Court went on to ask if the parties had any legal objection to the sentence imposed. SA. 44. Both parties stated there was no objection to the sentence. SA. 44.

This appeal followed.

## SUMMARY OF ARGUMENT

The sentence imposed by the district court was procedurally sound. The district court carefully considered the evidence and arguments presented by the parties, and its stated rationale for the sentence, making clear that the chosen sentence was based on the court's consideration of the seriousness of the offense, the need to promote respect for the law and to encourage specific and general deterrence, and to provide just punishment for the offense. The court's brief reference to Chicago's gun violence problem was not improper; to the contrary, it reflected on the seriousness of the offense and the need for specific and general deterrence, factors set forth in 18 U.S.C. § 3553(a). The court provided an ample explanation of its reasons for the chosen sentence, as well as the reasons for rejecting defendant's mitigation arguments and request for a below-Guidelines sentence, and its reasoning was fully supported by the record.

The district court did not err by imposing a supervised release condition requiring that defendant remain within the jurisdiction where he is supervised unless granted permission to leave by the court or a probation officer. Contrary to defendant's contention, it was not necessary for the condition to include a scienter requirement, and the term "jurisdiction"—orally defined by the court

at sentencing as the "federal district, jurisdiction, where the District Court sits"—is not impermissibly vague.

## ARGUMENT

### I. The District Court Did Not Commit Procedural Error in Sentencing Defendant.

#### A. Standard of Review

This Court reviews *de novo* claims of procedural error at sentencing. *United States v. Banks*, 828 F.3d 609, 618 (7th Cir. 2016).

#### B. Analysis

Defendant contends that the district court committed procedural error by relying on Chicago's gun violence problem as a justification for its choice of sentence. Defendant argues that the court's comments indicate that the court blamed defendant for a "broad issue." Br. 10. This argument is contradicted by the record; as the record reflects, the district court comprehensively considered defendant's offense conduct, criminal history, and personal background, as featured by the defense at sentencing, in determining the sentence and amply described its reasoning in imposing sentence.

A sentencing court commits procedural error when it fails to calculate, or improperly calculates, the Guidelines range, treats the Guidelines as mandatory, fails to consider the § 3553(a) factors, selects a sentence based on clearly erroneous facts, or fails to adequately explain the basis for the chosen sentence. *United States v. Castro-Alvarado*, 755 F.3d 472, 475 (7th Cir. 2014).

As reflected by the transcript of the sentencing hearing, the district court conducted a thorough analysis of the pertinent factors set forth in 18 U.S.C. § 3553(a) factors, and addressed the defendant's primary arguments in mitigation. From the outset, the court made clear that it considered defendant's commission of the instant offense while on parole as an important factor:

> Mr. Austin, what concerns me about this case is not only the repeated criminal history in your background. But also the fact that when you did get out, you were on parole. And even though you were on parole, it's clear and you knew that you shouldn't have a gun. And yet there you were, violating the terms of your parole, after all that you have been through, after all the periods of incarceration, after all the prior violations of parole that you had. And yet, there you were violating your terms of your parole.

> So when I try to kind of think ahead and try to see how you would behave after you serve this sentence, all I have to go on is your history. And your history seems to indicate or indicates to me that all the times that you have spent incarcerated, that up until now it didn't really teach you anything about obeying the law and about doing what is right, so that you and your family won't have to suffer for the consequences of your actions. That's what most concerns me…

> Furthermore, at the time of the offense, Mr. Austin was on parole for case 05 CR 0371901 for possession of a stolen vehicle and possession of a controlled substance, and case 05 CR 2118601, aggravated robbery. In my mind, this demonstrates a conscious and conspicuous disrespect for the law and the criminal justice system. And I consider this to be a significant aggravating factor.

SA. 30-31; 33-34.

In commenting on the nature and circumstances of the offense, the court made a cursory mention of Chicago's gun violence problem:

> Turning to the nature and circumstance of the offense, the government is right that illegal possession and use of guns has caused devastation throughout our communities, particularly here in Chicago. It seems that hardly a day goes by without reading about another shooting in the city caused by the proliferation of handguns.

SA. 34.

The court then immediately refocused its comments on defendant's actions, stating:

> In this case, Mr. Austin has a pistol in his possession while riding his bike at 1:50 a.m. in the morning. And when the officers attempted to interview him, he fled. And the officers recovered a .22 caliber pistol that Mr. Austin discarded.
>
> While laws prevent people with criminal histories like Mr. Austin's from possessing guns, those laws are there for a purpose. They must be enforced. And a tough sentence is needed to deter not only Mr. Austin from committing a similar offense in the future, but to deter others from doing the same.

SA. 34.

As demonstrated by the remarks above, the district court's reference to the Chicago gun violence problem did not weigh heavily into the sentencing determination. Moreover, there was nothing inappropriate in the court's discussion of this issue in the context of this case. Defendant was found in possession of a firearm after sustaining numerous criminal convictions,

including multiple drug convictions. The connection between drugs and gun violence is beyond dispute.

The defendant cites to *United States v. Robinson*, 829 F.3d 878 (7th Cir. 2016) and *United States v. Figueroa*, 622 F.3d 739 (7th Cir. 2010), but the courts' extraneous and inflammatory comments in those cases are not remotely similar to the comments the defendant challenges in this case. *Robinson* involved the judge drifting from the defendant's 2014 drug crime, to the 1967 riots in Milwaukee, to alleged and general urban decay, to recent protests in Baltimore over police brutality. 829 F.3d at 881. In *Figueroa*, the court's "lengthy and disconnected" comments included irrelevant discussions of the conditions and laws of other countries, Hugo Chavez, and Iranian terrorists. 829 F.3d at 741, 743-44.

Here, the circumstances of defendant's crime included the obvious point that possession of firearms by felons—particularly an incorrigible felon with numerous convictions, including convictions for crimes involving drugs and violence—contributes to problems of drugs and violence in Chicago's vulnerable neighborhoods. The court's discussion was not unconnected to defendant's offense or the purposes of sentencing in his case; to the contrary, the court tied its discussion to appropriate §3553(a) factors such as deterrence, promoting respect for the law, and the seriousness of the offense. The court acted fully within its considerable discretion in giving weight to the nature and

circumstances of defendant's offense, in particular his extensive criminal record, and the need for deterrence to protect the community.

The court expressly found that defendant's criminal history enhanced, rather than detracted from, the need to promote respect for the law and provide deterrence, noting that defendant's previous sentences—both heavy and light—had failed to deter defendant from committing crimes:

> I find it particularly troubling—what I find particularly troubling about Mr. Austin's criminal history is that he previously served a number of terms in prison, including between the times from August 12, 1994, to August 8, 1995; July 26, 1996, to January 3, 1997; March 14, 1997, to July 18, 1997; December 8, 1998, to November 20, 2000; May 23, 2003, to July 15, 2003; from April 19, 2004, to June 30, 2004; from May 11, 2007, to September 17, 2013, and then August 18, 2015, to August 21, 2015.
>
> A number of those incidents were times when Mr. Austin was readmitted due to his violations of parole. This leads me to conclude that those periods of incarceration did little to deter Mr. Austin from committing further crimes, and that a significantly greater term of imprisonment is needed now in order to get Mr. Austin's attention and to encourage him to reevaluate the course of his life to date and to take affirmative, hard choices to change it.

SA. 35. The record makes clear that, in sentencing the defendant, the district court made an individualized assessment of his case, rather than attempting to blame him for "broad issues."

**II. The District Court Did Not Plainly Err in Imposing a Supervised Release Condition Requiring that Defendant Remain in the Jurisdiction in Which He Is Supervised Unless Granted Permission to Leave.**

**A. Standard of Review**

Substantive challenges to conditions of supervised release generally are reviewed for abuse of discretion. *United States v. Bloch*, 825 F.3d 862, 869 (7th Cir. 2016). This Court reviews claims that conditions of supervised release are vague or overbroad for abuse of discretion if the condition was challenged below, and for plain error where the challenge was forfeited. *Id. United States v. Poulin*, 745 F.3d 796, 800 (7th Cir. 2014). Where an objection to a condition of supervised release is waived, the waiver extinguishes error, leaving nothing to review. *United States v. Gill*, 824 F.3d 653, 660 (2016).

**B. Analysis**

In the PSR, the Probation Officer recommended a number of supervised release conditions, including one that prohibited defendant from leaving the district of supervision without permission. SA. 40.

At sentencing, defendant expressly disavowed any objection to this proposed condition.

On appeal, defendant challenges the condition requiring that he remain in the district where he is being supervised. That condition states:

> [Y]ou shall remain within the jurisdiction where you are being supervised unless granted permission to leave by the court or a probation officer.

Defendant contends that the condition should be vacated because: (1) it should include a scienter requirement that a defendant "knowingly" leave the jurisdiction; and (2) the court failed to properly define "jurisdiction" by stating the geographical boundaries of the Northern District of Illinois. Br.13-14.

This Court has held that a condition requiring that the defendant remain within the supervising district is "administrative" in nature, applicable whenever a term of supervised release is imposed. *United States v. Warren*, 843 F.3d 275, 281 (7th Cir. 2016); *United States v. Poulin*, 809 F.3d 924, 931 (7th Cir. 2016) (citing *United States v. Kappes*, 782 F.3d 828, 843 (7th Cir. 2015); *United States v. Thompson*, 777 F.3d 368, 378 (7th Cir. 2015)) (internal quotation marks omitted).

Defendant is correct that the challenged condition contained no express scienter requirement. This is not error. This Court has held that a condition prohibiting the defendant from travel outside the district of supervision requires no scienter standard. *United States v. Givens*, 875 F.3d 387, 390 (7th Cir. 2017) (approving the precise condition included in the PSR and adopted by the district court, and concluding that the district court did not abuse its discretion by imposing the condition).

Second, defendant argues, relying on this Court's decisions in *United States v. Ortiz*, 817 F.3d 553, 555 (7th Cir. 2016) and *United States v. Dickson*, 849 F.3d 686, 690-91 (7th Cir. 2017), that the term "jurisdiction" as used in the challenged condition is impermissibly vague. As defendant acknowledges, in pronouncing sentence, the district court provided an explanation of the condition, stating that by "jurisdiction," the court meant "federal district, jurisdiction, where the District Court sits." Neither the defendant nor defense counsel gave any indication of confusion regarding the condition. SA 42.

In *Givens*, this Court rejected a challenge to an identically worded condition of supervised release where the district court "clarif[ied] that the condition requires Givens to remain within the judicial district." 875 F.3d at 390 (citing *Ortiz*, 817 F.3d at 555). And the court expressly rejected the defendant's argument that "jurisdiction" meant "jurisdictional power of the court," not "judicial district." *Id.* Here, as in *Givens*, the district court clarified that the term "jurisdiction" in the context of this condition meant "district where the court sits," thereby clarifying that the term jurisdiction denoted a geographic area. Neither defendant nor his counsel expressed any confusion about the meaning of the condition. The court's explanation was adequate, particularly where, as here, no evidence indicated that defendant lived near a boundary, or that other factors made it necessary for the court to provide a more detailed explanation.

Even if the district court's explanation were inadequate, there would be no need for a full resentencing, as defendant contends, Br. 14, because the need for clarification regarding the term "jurisdiction" could not possibly bear on any other aspects of the sentence, particularly, the term of imprisonment. *See United States v. Bickart*, 825 F.3d 832, 841-42 (7th Cir. 2016)(ordering a limited remand to reconsider the third-party notification condition of supervised release); *United States v. Anglin*, 846 F.3d 954, 971 (7th Cir. 2017) (stating, "[w]e do not think it plausible that orally pronouncing the conditions and slightly modifying some of them would induce the district judge to reconfigure other aspects of the sentence, particularly the imprisonment term.").

## CONCLUSION

For the foregoing reasons, the government respectfully requests that this Court affirm defendant's conviction and sentence

Respectfully submitted.

JOHN R. LAUSCH, JR.
United States Attorney

DEBRA RIGGS BONAMICI
Assistant United States Attorney
Chief of Appeals, Criminal Division

/s/ *Kalia Coleman*
KALIA COLEMAN
Assistant United States Attorney

# RULE 32 CERTIFICATION

I hereby certify that this brief complies with the typeface and type-style requirements of Federal Rules of Appellate Procedure 32(a)(5), 32(a)(6), and Circuit Rule 32(b), because it has been prepared using the Microsoft Office Word proportionally-spaced typeface of Century Schoolbook with 13-point font in the text and 12-point font in the footnotes.

Respectfully submitted.

JOHN R. LAUSCH, JR.
United States Attorney

By:        /s/ *Kalia Coleman*
KALIA COLEMAN
Assistant United States Attorney
219 South Dearborn Street, 5th Floor
Chicago, Illinois
(312) 353-3540

# CERTIFICATE OF SERVICE

I hereby certify that on Thursday, October 04, 2018, I electronically filed the foregoing Brief of the United States with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

Respectfully submitted.

By:     /s/ *Kalia Coleman*
KALIA COLEMAN
Assistant United States Attorney
219 South Dearborn Street, 5th Floor
Chicago, Illinois
(312) 353-3540